United States District Court
Southern District of Texas
ENTERED

JAN 2 1 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION-

| | | |
|---|---|---|
| ALICIA GARCIA, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-06-CV-134 |
| | § | |
| CITY OF HARLINGEN AND | § | |
| CAPTAIN RAMON VELA, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alicia Garcia brings suit against Captain Ramon Vela and the City of Harlingen alleging that she experienced sexual harassment as a police officer in the Harlingen Police Department and then retaliation for complaining of this treatment. (Doc. No. 1 at 1). Specifically, Garcia brings claims for violations of Title VII (discrimination on the basis of sex and retaliation against an individual who asserts her Title VII rights), 42 U.S.C. § 1983 (First Amendment retaliation and Fourteenth Amendment equal protection), and for defamation. (*Id.* at 8–9).

Defendants have each filed Motions to Dismiss various of Plaintiff's claims against them. After careful review of the successive Complaints, Motions to Dismiss, Answers, and Replies submitted in this case, the Court hereby **DENIES** Defendant Vela's Motion to Dismiss Plaintiff's Title VII claim to the extent that Plaintiff names Vela in his official capacity (Doc. Nos. 11, 32); **GRANTS** Vela's Motion to Dismiss Plaintiff's § 1983 First Amendment retaliation claim (Doc. Nos. 11, 32); **DENIES** Vela's Motion to Dismiss Plaintiff's § 1983 Fourteenth Amendment equal protection claim (Doc. Nos. 11, 32); and **DENIES** Vela's Motion

to Dismiss Plaintiff's defamation claim (Doc. Nos. 11, 32).  The Court further **GRANTS**

Defendant City of Harlingen's Motion to Dismiss Plaintiff's First Amendment retaliation claim

(Doc. Nos. 12, 33); and to the extent that Plaintiff has so pleaded, **GRANTS** the City's Motion to

Dismiss Plaintiff's Fourteenth Amendment retaliation claim (Doc. Nos. 12, 33).  Finally, to the

extent that it is still a live motion, the Court **DENIES** Defendant Vela's Motion to Stay

Discovery (Doc. No. 20).

## Procedural History

On October 2, 2006, Defendants each filed separate Motions to Dismiss.  (Doc. Nos. 6,

7).  Defendant Vela filed pursuant to FRCP 12(b)(6), failure to state a claim, as well as qualified

and official immunity.  (Doc. No. 7).   The City filed pursuant to 12(b)(6) and governmental

immunity.  (Doc. No. 6).  On October 18, 2006, Plaintiff filed her First Amended Complaint,

which added some clarifying language in response to Defendants' Motions to Dismiss.  (Doc.

No. 9).  On October 31, 2006, both Defendants filed Motions to Dismiss Plaintiff's First

Amended Complaint, responding to Plaintiff's clarifying language. (Doc. Nos. 11, 12).

Defendant City of Harlingen also filed an Answer to Plaintiff's First Amended Complaint.  (Doc.

No. 13).  Defendant Vela does not appear to have ever filed an Answer of any kind.  On

November 8, 2006, Defendant Vela filed a Motion to Stay Discovery Pending Ruling on

Qualified Immunity, arguing that decisions on matters of law could potentially dispose of the

claims against him prior to discovery.  (Doc. No. 14).  On November 16, 2006, Plaintiff filed

separate Responses in Opposition to Defendants' Motions to Dismiss.  (Doc. Nos. 17, 18).

Defendant Vela filed a Reply in Support of its Motion to Dismiss on November 21, 2006.  (Doc.

No. 19).  The next day, Plaintiff filed a Response to Vela's Motion to Stay Discovery, citing case

law to the effect that he was not entitled to a stay. (Doc. No. 20). On November 27, 2006, the City filed its own Reply in Support of its Motion to Dismiss. (Doc. No. 21).

On November 28, 2006, Magistrate Judge John William Black, before whom the case was then pending, held a Pretrial Conference with counsel for all parties. The Court indicated that it would soon be ruling on Defendants' Motions to Dismiss, and the parties agreed to jointly prepare and submit to the Court a proposed order memorializing any cooperation reached among the parties concerning discovery procedures. Unfortunately, Judge Black's untimely illness delayed action on the pending motions. On April 10, 2007, Defendant Vela submitted a Supplemental Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 22). Plaintiff responded on April 30, 2007. (Doc. No. 23).

The case was finally referred back to this Court on September 17, 2008. On October 3, 2008, this Court held a Hearing on all pending motions. At this Hearing, the Court requested an Amended Complaint from Plaintiff reflecting the present state of her claims. The Court also entered a new Scheduling Order. On October 24, 2008, Plaintiff filed her Second Amended Complaint against both Defendants. (Doc. No. 31). Defendants filed Responses on November 7, 2008, (Doc. Nos. 32, 33), and the City of Harlingen filed an Answer to Plaintiff's Second Amended Complaint. (Doc. No. 34). On December 1, 2008, Plaintiff filed Responses to Defendants' most recent Motions to Dismiss. (Doc. Nos. 35, 36). On December 10, 2008, Defendants filed Replies to Plaintiff's Responses. (Doc. Nos. 38, 39).

For the purposes of this Order, the Motions under consideration are: Defendant Captain Ramon Vela's Motion to Dismiss Plaintiff's Second Amended Complaint Under Rule 12(b)(6),

and Under Qualified and Official Immunity (Doc. No. 32), and Defendant City of Harlingen's

Motion to Dismiss Plaintiff's Section 1983 Claims Under Rule 12(b)(6) (Doc. No. 33).

## **Factual Background**

The following summary is taken exclusively from the Plaintiff's Second Amended

Complaint (Doc. No. 31).[1]  Plaintiff Garcia began working for the City of Harlingen Police

Department as a dispatcher in June of 1999 and worked continuously in this capacity for 37

months.  As a dispatcher, Garcia was required to go on "ride alongs" with a supervisor for

territorial familiarization.  Garcia alleges that at some point she went on a ride along with Ramon

Vela, who though not yet a captain, was a supervisor and in her chain of command.  Vela drove

to a dirt road and stopped the car.  He then handed Garcia a piece of paper asking her to go out

with him.  Garcia refused, and Vela eventually gave in and took her back to the communications

center.  As Garcia exited the car, Vela told her "Hey, you better never tell anyone that this

happened because I'll deny it and you'll never make it in the police department."  Shortly

thereafter, Garcia went on another ride along and told her accompanying officer, Sgt. Valdemar

Guajardo, about the incident.  Guajardo responded, "man, that's bad, what did you do?"  Plaintiff

told him she had said no, and the matter was dropped.

Sometime after this incident, Vela became a captain in the police department, a division

commander, one step below the chief of police.  On August 14, 2002, Garcia became a police

officer.  That same month, Garcia applied for an assignment involving crimes against property,

---

[1]When considering a motion to dismiss, "the complaint should be construed in favor of the plaintiff, and all facts pleaded should be taken as true." *Southern Christian Leadership Conference v. Supreme Court of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001).

which, according to the Complaint, "in her opinion, would have been a promotion." Garcia

approached now-Captain Vela to relay her interest in the position "since the appointment

specified to contact Vela for any questions or details pertaining to the detective position." Vela

told her he would "let her know later." Not long after, another officer was awarded the position.

Garcia approached Vela and asked what she could do to improve her chances of securing  a

promotion. Vela answered that Garcia was "just not trying hard enough," turned around, and

walked away laughing.

Soon thereafter Garcia applied for an investigator position and again expressed her

interest to Vela. Another officer was selected, and Garcia again approached Vela to inquire

about her failure to get the position. Vela gave several explanations, including, once again, that

she was not trying hard enough. When Garcia asked what he meant by this, Vela "crossed his

arms, sat back in his chair, looked down at his pants towards his crotch area, and looked at the

plaintiff and smiled." Garcia told him "ok, I get it" and walked away.

Garcia applied for a position in the Special Crimes unit in September of 2004 but was not

selected.

In November of 2004, Garcia applied for positions in the Youth Services Division and the

Narcotics Division. Vela indicated in conversation with Garcia that he would communicate her

particular interest in the Youth Services Division to Sergeant M. Garcia. Plaintiff asked Vela

"whether he was going to give her a chance," and Vela stated "yes, off the record, wait until I

announce it then it will be official." Plaintiff interviewed for the Narcotics position that same

day and was asked which position she preferred. Plaintiff replied that she preferred the Youth

Services position. As a result of these comments, Sgt. Garcia removed her from consideration

for the Narcotics position, although, unbeknownst to her, the Youth Services position had apparently already been promised to another officer.

Garcia then applied for the position of Communications Manager. On May 26, 2005, she told Sgt. Manthey that she had applied for this position and that she understood that it would result in her losing her status as a police officer. Sgt. Manthey suggested that Garcia should apply for a detective position instead. Garcia told Manthey that she would never become a detective if Vela had any say in the matter. When asked to explain, Garcia described the ride-along incident. Manthey then replied, as if to himself, "This explains why your IDC's [Interdepartmental Communications] for detective were in the Captain's trash." The conversation then ended. In November of 2005, Garcia was informed that she had not been selected for the Communications Manager position.

At some heretofore unspecified date (but clearly prior to June 15, 2005), Garcia formally reported the alleged sexual harassment and retaliation incidents with Capt. Vela to the Human Resources Department. Various acts of retaliation allegedly ensued. On June 15, 2005, Vela filed a formal complaint accusing Garcia of asserting untruthful charges, filing a false report, making statements intended to bring the department into disrepute or ridicule, and bringing reproach or discredit upon the department. This is the basis of Garcia's defamation claim. An allegedly "sham investigation" of her complaint was conducted and concluded in insufficient evidence against Capt. Vela. Further acts of retaliation allegedly included transferring Garcia to positions within Vela's chain of command, shunning, assignment of desk duty, reassignment to an "old worn out unit," negative evaluations, unknown subjects keying her personal vehicle, changes in the incident reports she submitted, false allegations of official misconduct, and

6

allowing her confidential complaint to be disseminated to other police officers within the department.[2]

## Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations as true and must review them in the light most favorable to the Plaintiff, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996).  To avoid dismissal for failure to state a claim, a plaintiff must plead specific conduct and actions giving rise to a constitutional violation. *Baker*, 75 F.3d at 195.  Conclusory allegations and unwarranted deductions of fact are not admitted as true in a Motion to Dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).  To decide whether a complaint sufficiently states any claims against the defendants, a court must look to the facts well pleaded by the complaint. *Id.*  A Rule 12(b)(6) dismissal may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

## Discussion of Claims

Plaintiff alleges causes of action against Defendant Vela under Title VII (discrimination on the basis of sex and retaliation against an individual who asserts her Title VII rights), 42 U.S.C. § 1983 (First Amendment retaliation and Fourteenth Amendment equal protection), and

---

[2]Plaintiff was also informed *after* she had filed her sexual harassment complaint that she would not receive the Communications Manager position.

defamation.  Plaintiff alleges the same Title VII and § 1983 claims against Defendant City of

Harlingen.  Defendants argue that Plaintiff has alleged defamation against them both, however

Plaintiff denies alleging defamation against the City.  The following discussion addresses first

Defendant Vela's Motion to Dismiss and then the City of Harlingen's Motion to Dismiss.

I.      **Claims against Vela**

        A.      *Title VII*

        Plaintiff alleges that "Defendants' conduct violates Title VII of the Civil Rights Act of

1964, which prohibits discrimination in employment on the basis of sex and retaliation against an

individual who asserts her Title VII rights."  (Doc. No. 31 at 8).

        Plaintiff does not specify whether she names Vela in his official or individual capacity.  A

Title VII claim lies against "employers," "employment agencies," and "labor organizations."  *See*

42 U.S.C. §§ 2000e2, 2000e-3; *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998).  A Title

VII claim does not lie against a supervisor in his individual capacity.  *Huckabay*, 142 F.3d at 241.

Thus, Defendant Vela can only be sued under Title VII in his "official" capacity, i.e., to the

extent that he is an "employer" for the purposes of Title VII.  *See id.*  The definition of

"employer" is broad and includes agents of the actual employer.  42 U.S.C. 2000e(b); *Hamilton*

*v. Rodgers*, 791 F.2d 439, 442 (5th Cir. 1986) (overruled in part on other grounds).  The Fifth

Circuit has held that a supervisor is an "employer" under Title VII "if he wields the employer's

traditional rights, such as hiring and firing."  *Huckabay*, 142 F.3d at 241.  Recognizing,

however, "that Title VII should be accorded a liberal interpretation in order to effectuate the

purpose of Congress to eliminate the inconvenience, unfairness, and humiliation" of

discrimination, the Fifth Circuit has also held that "a person is an agent under § 2000e(b) if he

8

participated in the decision-making process that forms the basis of the discrimination."
*Hamilton*, 791 F.2d at 442, 443.  Thus, individuals in a Fire Department having "authority over matters such as car assignments and the staffing of shifts" and who have the power to file "critical reports" concerning subordinates are agents of the Fire Department for the purposes of Title VII. *Id.* at 442.

Plaintiff alleges facts that support an inference, reasonable at this stage of the proceedings, that Vela had "authority over matters" involving assignments and staffing when he allegedly violated her Title VII rights.  Further, Defendant himself urges that Vela's complaint accusing Plaintiff of making false charges against him was made "in the course of performing [his] duties," (Doc. No. 32 at 21), suggesting that it was well within Vela's power to file "critical reports concerning subordinates."  Thus, under the prevailing standard, the Court finds that Defendant Vela acted as an agent for the City of Harlingen, and is thus an "employer" for the purposes of Title VII.  Accordingly, to the extent that Plaintiff names Vela in his official capacity, the Court DENIES Defendant Vela's Motion to Dismiss Plaintiff's Title VII claim.[3]

B.     *Section 1983*

Plaintiff alleges two kinds of § 1983 claims against Vela : First Amendment retaliation and Fourteenth Amendment equal protection.  We address each in turn.

1.     RETALIATION

Plaintiff alleges that "Defendants' actions caused the Plaintiff to be deprived of rights, privileges and immunities guaranteed by the Constitution of the United States, specifically the

---

[3]To the extent, however, that Plaintiff has named Vela in his *personal* capacity in her Title VII claim against him, the Court GRANTS Vela's Motion to Dismiss.

9

1st and 14th Amendments of the United States Constitution, in that Defendants' actions violate her First Amendment right to free speech and her 14th Amendment right to equal protection." (Doc. No. 31 at 9).

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The party must (1) suffer an adverse employment action; (2) show that the speech in question was on a matter of public concern; (3) show that her interest in commenting on matters of public concern outweighs the public employer's interest in efficiency; and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001).

Plaintiff's Complaint does not specify which of Vela's actions violated her First Amendment rights, so the Court must attempt to construe these from her recitation of facts. To the extent that Plaintiff's First Amendment claim alleges retaliation against her for her exercise of protected speech, we look to specific instances of Plaintiff's engagement in protected speech and to the retaliatory acts allegedly taken by Vela in response. Plaintiff alleges three acts involving speech prior to filing her formal sexual harassment complaint: (1) sometime before 2002, Plaintiff told Sgt. Guajardo about the ride along incident with Vela; (2) in 2004, Plaintiff discussed with Vela reassignments to other positions; and (3) in 2005, Plaintiff told Sgt. Manthey about the ride-along incident with Vela.

According to her own Complaint, in none of Plaintiff's conversations with Vela did Plaintiff mention or even allude to Vela's alleged harassment. Vela does seem to have alluded to the alleged ride-along incident when he on two occasions said Plaintiff was not "trying hard enough," not to mention when he apparently glanced at his crotch. These are *Vela's* speech acts,

10

however, not Plaintiff's. A retaliation claim rests on retaliation taken against Plaintiff in response to *Plaintiff's* protected speech. Thus, Plaintiff's conversations with Vela cannot be the source of any alleged retaliation by Vela, since Garcia never said or did anything, protected or not, that could plausibly "motivate[]adverse employment action," as required by the fourth element of a retaliation claim. *Serna*, 244 F.3d at 482.

The conversations with Sgts. Guajardo and Manthey, however, could plausibly be construed as motive for retaliation, at least to the extent that Plaintiff, by mentioning the ride-along incident to other officers, "disobeyed" Vela's alleged warning not to tell anyone about what happened. Nonetheless, Plaintiff is required to show that this speech activity was the actual cause of any alleged adverse employment action. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001). This requires that the defendant have actual knowledge of the speech activity prior to the adverse employment action. *Id.* at 603–04 ("If there is no evidence that the [defendants] knew of the protected activity, [the plaintiff] cannot show that the activity motivated retaliatory behavior.").

Plaintiff has not alleged that Vela knew of the conversations with Sgts. Guajardo and Manthey. Thus, Plaintiff has not alleged facts that, if proven, would support an essential element of a retaliation claim based on these conversations.

This leaves Plaintiff's 2005 formal complaint against Vela. The only retaliatory act Plaintiff specifically alleges Vela took after she filed this complaint was the complaint Vela wrote to the Police Chief charging her with making a false complaint. Plaintiff does not allege that Vela was responsible for the "sham" investigation into her complaint, nor does she allege that Vela committed or directed any of the various other acts she alleges ensued after her

complaint, e.g., shunning, keying, etc. Thus, Plaintiff's retaliation claim against Vela ultimately reduces to Vela's complaint charging her with making false accusations against him.[4]

To satisfy the first element of a retaliation claim, Plaintiff must be able to show that she suffered "adverse employment action." *Serna*, 244 F.3d at 482. Adverse employment actions are "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). The Fifth Circuit has pointedly "declined to expand the list of actionable actions," noting that "some things are not actionable even though they have the effect of chilling the exercise of free speech." *Id.* Among the type of actions held by the Fifth Circuit not to be adverse employment actions are "false accusations, verbal reprimands, and investigations." *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999). A formal reprimend, which is actionable, "goes several steps beyond criticism or accusation and even beyond a mere investigation." *Id.* at 512 n.7.

Plaintiff does not allege that she was discharged, demoted, or denied a promotion[5] as a result of filing her complaint. The failures to promote she alleges all occurred before she filed her complaint. Thus, Vela's complaint is actionable only to the extent that it can be characterized as a "*formal* reprimand." Plaintiff has alleged no facts indicating that Vela's

---

[4]Plaintiff also alleges that the denial of the Communications Manager position also took place after she filed her sexual harassment complaint. However, she never alleges facts suggesting that Vela was in any way responsible for or involved in this decision, unlike the decisions to deny her the previous job assignments. *See* discussion *infra* at 17–18. At the Hearing of October 3, 2008, the Court requested that Plaintiff submit amended pleadings because "various parts of the Motions to Dismiss are directed at whether something was pled or wasn't pled." Accordingly, the Court asked Plaintiff "to specifically plead every cause of action you have ever pled." In light of this warning and request, the Court considers Plaintiff's failure, once again, to plead facts sufficient to meet an element of her retaliation claim decisive.

[5]Again, setting aside the denial of the Communications Manager position, for reasons discussed *supra* at note 4.

complaint was anything beyond criticism or a false accusation. Thus, the Court finds that Vela's complaint is not an "adverse employment action" for the purposes of a § 1983 claim.

Since Plaintiff has failed to allege an essential element of a First Amendment retaliation claim, the Court GRANTS Defendant's Motion to dismiss this claim.

2.   EQUAL PROTECTION

Plaintiff alleges that "Defendants' actions caused the Plaintiff to be deprived of rights, privileges and immunities guaranteed by the Constitution of the United States, specifically the 1st and 14th Amendments of the United States Constitution, in that Defendants' actions violate her First Amendment right to free speech and her 14th Amendment right to equal protection." (Doc. No. 31 at 9).  Plaintiff also alleges that she was "subject to unwelcome sexual harassment" and "suffered an adverse employment action because of her sex."  (Doc. No. 31 at 6).  Taken together, these allegations form the basis of a § 1983 claim for denial of equal protection. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment."); *id.* (citing *Pontarelli v. Stone*, 930 F.2d 104, 114 (1st Cir. 1991) for the proposition that "sexual harassment is a deprivation of equal protection and is actionable under 42 U.S.C. § 1983").

When, as here, a § 1983 claim parallels a Title VII claim under a given set of facts, "the elements required to be established for each claim are deemed the same under both statutes." *Merwine v. Bd. of Trustees for State Institutions of Higher Learning*, 754 F.2d 631, 635 n.3 (5th Cir. 1985).  In order to maintain a claim for sexual harassment under Title VII, and so under § 1983, a plaintiff must demonstrate: (1) that she belongs to a protected group; (2) that she was

subjected to unwelcome sexual harassment; (3) that the harassment complained of was based

upon sex; and (4) that the harassment complained of affected a term, condition, or privilege of

employment. *Watts v. Kroger*, 170 F.3d 505, 509 (5th Cir. 1999). In order to satisfy the fourth

element, plaintiff must either demonstrate that she was subjected to a tangible employment action

as a result of her acceptance or rejection of the unwelcome sexual harassment, *Casiano v. AT&T

Corp.*, 213 F.3d 278, 284 (5th Cir. 2000), or that the unwelcome sexual harassment was so

subjectively and objectively severe and pervasive as to alter the conditions of the victim's

employment and create an abusive working environment, *Lauderdale v. Texas Dept. Of Criminal

Justice*, 512 F.3d 157, 163 (5th Cir. 2007). When plaintiff can demonstrate a tangible

employment action, the claim is classified as a *quid pro quo* claim. *Casiano*, 213 F.3d at 283.

When no tangible employment action is demonstrated, the claim is classified as a hostile work

environment claim. *Id.* To prevail on this claim, plaintiff must show that a reasonable person

would find the alleged conduct hostile and abusive and that plaintiff did, in fact, perceive the

alleged conduct as such. The alleged conduct must be of such a nature that it altered plaintiff's

work environment and constituted abuse based on sex. The court will look at the totality of the

circumstances, including the frequency of the alleged harassment and its severity in each

instance. Conduct that is sufficiently severe may create hostile work environment even when it

happens infrequently. Likewise, less severe conduct occurring frequently may also create a

hostile work environment. *Lauderdale*, 512 F.3d at 163.

Plaintiff does not specify whether she is making a *quid pro quo* or hostile environment

claim. Her recitation of facts suggests the possibility of both. For the purposes of a 12(b)(6)

claim, this Court must decide whether Plaintiff has alleged facts sufficient to state one or both

types of sexual harassment claim.  Both types of claim have the first three elements in common, i.e., (1) that plaintiff belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment complained of was based upon sex.  The Court finds that Plaintiff alleges facts sufficient to meet each of these elements.

To meet the fourth element of a sexual harassment claim, i.e., that the harassment complained of affected a term, condition, or privilege of employment, Plaintiff must allege facts showing either a hostile working environment or a *quid pro quo*.

Plaintiff alleges three separate acts by Capt. Vela that potentially contributed to a hostile working environment: the proposition and threat during the initial ride along, the first conversation in which Vela told Plaintiff she was not "trying hard enough," and the third conversation in which he again told her she was not trying hard enough and allegedly looked towards his crotch.  Pursuant to Fifth Circuit precedent, three incidents within roughly three years and over the course of six years is not "pervasive."  Nor are the actions alleged sufficiently egregious to mitigate their isolated nature.  *See Lauderdale*, 512 F.3d at 163.  The Fifth Circuit has held the following sets of actions insufficient as a matter of law to create a hostile working environment: comments to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff, *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004); comments to plaintiff including "your nipples are the same color as your elbows," and touchings including rubbing plaintiff's arm from shoulder to wrist, *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 871–75 (5th Cir. 1999).  In light of this precedent, which is controlling, Capt. Vela's alleged actions, while inappropriate, are not enough for this Court to

15

hold that he created a hostile working environment for the purposes of a sexual harassment claim. Accordingly, the Court grants Defendant summary judgment to the extent that Plaintiff alleges sexual harassment based on a hostile working environment.

Plaintiff, however, can meet her burden on the fourth element by alleging facts which, if true, suggest a *quid pro quo*. To satisfy this element, Plaintiff needs to that she was (1) subjected to a tangible employment action (2) as a result of her acceptance or rejection of the unwelcome sexual harassment.

Tangible employment actions "require an official act of the enterprise, a company act, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998). The employment actions implicated by Vela's alleged *quid pro quo* are the assignments Plaintiff was denied, allegedly because "she was not trying hard enough." These assignments can most plausibly be characterized as "promotions," although Defendants contend that Plaintiff fails to properly allege that the assignments were in fact promotions. (*See, e.g.*, Doc. No. 2 at 15). Fifth Circuit courts have construed the term "promotion" in a Title VII context in terms of a variety of factors, which include: changes in job title, changes in day-to-day duties, higher wages, greater responsibility, and an application and selection process. *See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 877–79 (5th Cir. 1999); *Bell v. City of Dallas*, No. Civ.A.3:02-CV-0029-P, 2002 WL 1822732, at *8–9 (N.D. Tex. Aug. 7, 2002); *Carter v. Castillo*, 2002 U.S. Dist. LEXIS 1264, at *1–2 (N.D. Tex. Feb. 7, 2001). Plaintiff alleges in her Complaint that "[n]one of the positions for which Plaintiff was refused a promotion involved (a) the same job title as her present position, (b) the same benefits as her

present position, (c) the same duties as her present position, or (d) the same responsibilities as her present position." (Doc. No. 31 at 6). The Court finds that Plaintiff has alleged facts sufficient to show that she suffered tangible employment action, in the form of denials of promotion, for the purposes of a Motion to Dismiss.

Plaintiff is also required to allege facts which, if true, show that Defendant Vela visited this tangible employment action upon her "as a result of her acceptance or rejection of the unwelcome sexual harassment." Plaintiff alleges that Vela repeatedly explained her failure to receive the assignments she sought in terms of her "not trying hard enough," which plausibly alludes to her failure to "accept" his sexual overtures. Thus, to the extent that Vela was responsible for denying Plaintiff the assignments, the Court finds that it is reasonable to infer at this stage that these denials were "as a result of her acceptance or rejection of the unwelcome sexual harassment."

The question, then, is whether Vela was in fact responsible for denying Plaintiff the assignments. A recent decision from the Western District of Louisiana reads Fifth Circuit case law to require that the defendant "influence the ultimate decision" to take tangible employment action against the plaintiff. *See Thornhill v. Finley, Inc.*, No. 07-1033, 2008 WL 4344887, at *3–5 (W.D. La. Sept. 23, 2008) (holding that because "a fact-finder . . . could reasonably determine that [the defendant] influenced the ultimate decision to terminate plaintiff's employment, [there is] a genuine material fact as to whether plaintiff's termination from employment was the result of her acceptance or rejection of [the defendant's] alleged sexual advances").

It is unclear from Plaintiff's Complaint precisely what role Vela played in denying the assignments in question.  Nonetheless, Plaintiff alleges at least three facts which, if true, indicate that Vela's actions "influenced the ultimate decision."  First, Plaintiff alleges that the application for the assignment involving crimes against property "specified to contact Vela for any questions or details pertaining to the detective position." (Doc. No.31 at 4).  Second, Plaintiff alleges that she asked Vela regarding the Youth Services position whether "he was going to give her a chance." (*Id.* at 5).  Third, Plaintiff alleges that when she told Sergeant Manthey about the ride-along incident, he responded "[t]his explains why your IDC's [Interdepartmental Communications] for detectives were in the Captain's trash." (*Id.* at 6).  For the purposes of a Motion to Dismiss, the Court can reasonably infer that these allegations, if true, show that Vela "influenced the ultimate decision" to deny Plaintiff at least these promotions.

Taking these findings together, the Court finds that Plaintiff has met each of the elements required to state a claim of sexual harassment against Defendant Vela under Title VII, and so a claim for denial of equal protection under § 1983.  Defendant, however, has broadly advanced a claim of qualified immunity against Plaintiff's federal claims.  Thus, the Court must decide whether Defendant is entitled to qualified immunity from Plaintiff's § 1983 claim for sexual harassment.

The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.  *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).  The qualified immunity analysis is a two-step inquiry.  First, a court must decide "whether the plaintiff's allegations, if true, establish a

18

violation of a clearly established right." *Id.* Next, "if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.*

The answer to the first question is straightforward in this case. The right to be free of sexual harassment in the form of *quid pro quo* is clearly established and has been since well before the Supreme Court decided *Burlington Industries* and *Faragher* in 1998. *See Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Lauderdale v. Texas Dept. Of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007).

The second question asks us to decide whether Vela's alleged conduct, i.e., denying Plaintiff promotions as a result of her refusal to accept his sexual overtures, was objectively reasonable in light of this clearly established law. To the extent that Vela's alleged behavior is virtually a paradigm of *quid pro quo* sexual harassment, the Court has little difficulty in finding that such alleged conduct was not objectively reasonable. Thus, Defendant is not entitled to qualified immunity.

Accordingly, Defendant's Motion to Dismiss Plaintiff's § 1983 claim for deprivation of equal protection is DENIED.

C.     *Defamation*

Plaintiff alleges that Defendant Vela's formal complaint accusing her of filing a false report and asserting untruthful charges constitutes defamation. Plaintiff states in her Original Complaint that "Officer Garcia's reputation was injured by the publication of Captain Vela's formal complaint [and] Captain Vela's defamatory statement referred to Officer Garcia, it was false, and when the statement was made the Defendant was acting with actual malice, was

19

negligent, or was liable without regard to fault, and as a result Plaintiff suffered injury." (Doc. No. 1 at 9). Further, "[t]he defamatory statement of Captain Vela was made on June 15, 2005 and was discovered by Plaintiff less than one year prior to the filing of this Complaint." (*Id.*). Plaintiff states in her Second Amended Complaint that the defamation claim is "asserted against Vela only" and is "not filed pursuant to the Texas Tort Claims Act." (Doc. No. 31 at 9–10).

Defendant contends that Plaintiff's defamation claim against him should be dismissed pursuant to Texas Civil Practice and Remedies Code § 101.106. Specifically, Defendant contends that Plaintiff in her Original Complaint asserted her defamation claim under the Texas Tort Claims Act ("TTCA"). Since such an election cannot be revoked by subsequent amendment, Defendant argues, Plaintiff's later amendments to her Complaint are unavailing. According to Defendant, three provisions of the TTCA require dismissal of Plaintiff's defamation claim against Vela. Section 101.106(a) states that the filing of a suit "under this chapter" against a governmental unit is an irrevocable election by plaintiff and forever bars suit or recovery against any individual employee regarding the same subject matter. Under § 101.106(e), when a suit is filed under "this chapter" against both a governmental unit and any of its employees, the Act requires that the employees be dismissed from the suit upon a motion by the governmental unit. Vela contends that Plaintiff in her Original Complaint brought her claim against both Vela and the City of Harlingen, and since the City of Harlingen has made a motion requesting dismissal of the claim against Vela[6], a dismissal is warranted.

Alternatively, Defendant contends, even if Plaintiff had not brought her defamation claim against the City of Harlingen, the TTCA provides in § 101.106(f) that if a suit is brought against

---

[6](*See* Doc. No. 11 at 7).

an employee of a governmental unit based on conduct within the general scope of that

employee's employment and if it "could have been brought under this chapter" against the

governmental unit, the suit is considered to be against the employee's official capacity only.

Thus, to the extent that Vela's filing of a complaint against Plaintiff accusing her of making false

accusations is "within the general scope" of Vela's employment as a police captain, he cannot be

sued in his personal capacity for defamation relating to this complaint.

The Court rejects both of these grounds for dismissing Plaintiff's defamation claim

against Vela. First, Plaintiff's Original Complaint[7], construed in Plaintiff's favor, as we must[8],

does not bring a defamation claim against the City of Harlingen, and so §§ 101.106(a) and (e) do

not apply. The Original Complaint never mentions the City of Harlingen in the context of the

defamation claim, instead referring only to "Captain Vela's defamatory statement" and "the

defamatory statement of Captain Vela." (Doc. No. 1 at 9). Defendant advances a number of

reasons why the Court should nonetheless infer that Plaintiff brought her defamation claim

against the City of Harlingen. These include: (1) the Original Complaint mentions Vela's

complaint, the subject of the defamation claim, when reciting the facts relevant to federal claims

made explicitly against both Vela and the City; (2) the Original Complaint alleges Vela's

defamatory statement was a formal complaint; (3) the Original Complaint alleges that Vela's

complaint was part of a departmental policy to deter sexual harassment complaints; (4) the

Original Complaint alleges only one set of compensatory and punitive damages for injuries "at

---

[7]Texas courts have held that a plaintiff's "original petition, not his amended petition, is the proper one to scrutinize to determine whether dismissal under section 101.106(e) is appropriate." *Brown v. Xie*, 260 S.W.3d 118, 122 (Tex.App.–Houston [1st Dist.] 2008, no pet.); *see also Villasan v. O'Rourke*, 166 S.W.3d 752, 762 (Tex.App.–Beaumont 2005, pet. denied). This Court applies this rule to § 101.106(a), as well.

[8]*Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

the hands of the defendants," which she asks to be awarded jointly and severally against them; and (5) the Original Complaint sues the City for the same subject matter as the defamation claim against Vela and so triggers § 101.106, and thus dismissal.

The Court finds that the first four reasons are insufficient on their face to overcome a reading of the Original Complaint that is construed in Plaintiff's favor.

Defendant cites a recent Texas case in support of his fifth reason, i.e., that the Original Complaint sues the City for the same subject matter as the defamation claim against Vela and so triggers § 101.106, and thus dismissal. In *Brown v. Xie*, 260 S.W.3d 118 (Tex.App.–Houston [1st Dist.] 2008, no pet.), Plaintiff Xie filed an Original Petition asserting a cause of action for defamation against employees of the hospital at which Xie had formerly worked, and seeking injunctive relief against both the employees and the hospital. *Id.* at 122. Xie sought the injunction against the employees to prohibit the employees from publishing allegedly defamatory communications made about him, and sought the injunction against the hospital so that the employees could not publish these communications and then "cloak themselves in the security blanket of sovereign immunity" the hospital enjoyed. *Id.* at 120. Based on this Original Petition, the employees and the hospital moved to dismiss the employees under § 101.106(e).

The questions for the court were (1) whether the request for an injunction against the hospital was effectively a lawsuit against the hospital, and if so, was it a suit for defamation; and (2) whether a suit for defamation is a suit brought "under this chapter" for the purposes of the TTCA. Observing that "a party can obtain an injunction only by showing a probable right to recovery through a claim or cause of action," the court concluded that "a suit requesting an injunction against a governmental entity is properly characterized as a claim against the

22

government." *Id.* at 122. Since the sole cause of action asserted by Plaintiff was for defamation against the employees, Plaintiff could only obtain the injunction against the hospital by showing a probable right of recovery on the defamation claim. *Id.* Thus, the court concluded, "Xie's lawsuit for injunctive relief against the hospital is properly characterized as a defamation claim against the hospital." *Id.* at 122–23. The court then cited the Supreme Court of Texas for the proposition that "all tort theories" alleged against a governmental unit are assumed to be "under this chapter" for the purposes of § 101.106, regardless of whether the torts alleged are torts for which the TTCA waives immunity. *Id.* at 123 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657–58 (Tex. 2008)). Thus, even though defamation, as an intentional tort, is not waived by the TTCA, to the extent that Plaintiff Xie alleged a "tort theory" against the hospital, Plaintiff had brought suit "under this chapter" against the governmental unit for the purposes of § 101.106. *Id.*

Defendant Vela contends that "*Brown* applies directly to this case." (Doc. No. 32 at 11). Since Plaintiff's Original Complaint asserts the same defamation facts against both Vela and the City, and seeks one set of damages, including punitive damages that could only arise from a tort claim, Defendant concludes that Plaintiff effectively brought suit against the City for defamation, and so "under this chapter" for the purposes of 101.106(e). *Id.*

The Court is not persuaded that *Brown* applies to this case. In her Original Complaint, Plaintiff asked the Court for a judgment "[e]njoining and permanently restraining these violations of Title VII and 42 U.S.C. § 1983." (Doc. No. 1 at 10). This request for an injunction specifically limits its purview to the violations related to Plaintiff's federal claims. The Court could grant this request without finding a "probable right to recovery" on Plaintiff's defamation

claim against Vela. *Cf. Brown*, 260 S.W.3d at 122. Thus, unlike in *Brown*, in which the sole

cause of action asserted in the Original Complaint was defamation, Plaintiff here has asserted

federal claims that encompass a set of facts far larger than those related to the defamation claim

against Vela. Thus, it would be inapposite to conclude that Plaintiff's request for injunctive

relief is "properly characterized as a defamation claim" against the City. Accordingly, the Court

denies that § 101.106(e) requires dismissal of the defamation claim against Vela.

      Section 101.106(f) is inapplicable to Plaintiff's suit, as well. This subsection provides:

> If a suit is filed against an employee of a governmental unit based on conduct
> within the general scope of that employee's employment and if it could have been
> brought under this chapter against a governmental unit, the suit is considered to be
> against the employee in the employee's official capacity only. On the employee's
> motion, the suit against the employee shall be dismissed unless the plaintiff files
> amended pleadings dismissing the employee and naming the governmental unit as
> defendant on or before the 30th day after the motion is filed.

Plaintiff contends that this subsection does not apply because the defamation claim could not

have been "brought under this chapter," i.e., the TTCA, because the TTCA does not waive

governmental immunity for intentional torts. (Doc. No. 17 at 4). Defendants note that the

Original Complaint alleges "Defendant was negligent" when his statement was made, and thus

the claim is not an intentional tort. However, Plaintiff also alleges that "Defendant was acting

with actual malice" when his statement was made. (Doc. No. 1 at 9). Again, construing the

Complaint in Plaintiff's favor as we must under a Motion to Dismiss, the Court finds that while

the language alleging negligence (as well as liability "without regard to fault") potentially

implicates the TTCA, the language alleging actual malice does not, and so to the extent that

Plaintiff brings a claim for defamation based on actual malice, the claim lies outside the TTCA's

waiver of immunity. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452–53 (Tex.

1996) (discussing actual malice within the ambit of intentional torts). Thus, § 101.106(f) does not apply.[9] TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2); *see Lopez v. Williams*, No. 09-04-445 CV, 2006 WL 2789027, at *4 (Tex.App.–Beaumont May 17, 2006, no pet.) (mem. opin.) (holding that plaintiff could not bring a theft claim against the County under the TTCA "because the claim is based on an intentional act").

Finally, Defendant urges the Court to dismiss Plaintiff's defamation claim under official immunity. Official immunity is an affirmative defense that protects an officer or employee of a governmental entity from liability when that officer or employee (1) acts in the scope of his employment; (2) performs discretionary duties; and (3) acts in good faith. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). Since official immunity is an affirmative defense, Defendant will ultimately need to prevail on each element. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *see also Bellsouth Adver. & Pub. Corp. v. Am. Bus. Lists, Inc.*, No. 1:90-CV-149-JEC, 1991 WL 338392, at *8 n.5 (N.D. Ga. Sept. 8, 1992). For the purposes of his Motion to Dismiss, Defendant must therefore show that his conduct–in this case, the filing

---

[9]Defendant asks the Court to extend the reasoning of *Mission Consolidated Independent School District v. Garcia* to § 101.106(f). As Defendant concedes, however, this case explicitly declines to consider whether the court's interpretation of "under this chapter" as it is used in §§ 101.106(a), (c), and (e) also applies to the slightly different phrase "could have been brought under this chapter," which appears in § 101.106(f). *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 n.5 (Tex. 2008). Defendant urges that there is no reason to construe the phrases differently; "in either case, it should not matter whether the TTCA waives immunity as to the tort claim or not." (Doc. No. 32 at 12). The Court disagrees. Since the TTCA does not waive immunity for intentional torts, Plaintiff could not have brought her defamation claim against the City. If the language "could have been brought under this chapter" is interpreted to include claims that in fact could not have been brought under the TTCA, which would be the effect of applying the *Mission* court's holding to § 101.106(f), then Plaintiff could not bring her defamation claim against Vela either, except in his official capacity. However, as the City of Harlingen has pointed out, any "official capacity" claims against Vela are "in law claims against the City," and so barred when those claims allege intentional torts. (Doc. No. 7 at 7 (citing *Holland v. City of Houston*, 41 F. Supp.2d 678, 716 (S.D. Tex. 1996)). In this scenario, a potential plaintiff is left with no redress for intentional torts committed by a governmental official when those torts are arguably committed within the general scope of the official's employment. The Court will not assume that the Supreme Court of Texas would countenance this result. Of course, Vela might argue that intentional torts by their nature cannot be committed within the general scope of an official's employment, but that would mean that Vela, accused here of an intentional tort, fails the first prong of 101.106(f), and so cannot invoke its protection.

of the complaint against Plaintiff–meets each element as a matter of law. The Court finds that given the fact that it must accept Plaintiff's allegations as true, Defendant has not shown as a matter of law that Defendant filed his complaint "in good faith," as required by the third element.

To prove the defense of official immunity, the defendant must establish that he acted in good faith, using a standard of "objective legal reasonableness" without regard to the official's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). An official acts in good faith if "a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004).

In this case, whether or not a reasonably prudent official, under similar circumstances to those of Captain Vela, could have believed that filing a complaint against Plaintiff accusing her of making false charges of sexual harassment was justified will depend decisively on whether Plaintiff's accusations were in fact true. If Plaintiff's allegations were true, then it is difficult to see how a reasonably prudent official, knowing that Plaintiff's allegations against him were true, would nonetheless file a complaint accusing Plaintiff of making false charges. Thus, the issue of good faith will in at least one decisive respect turn on the fact question of whether the sexual harassment incidents of which Plaintiff complained actually occurred. The Court will not decide this fact question under a Motion to Dismiss. *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996). Thus, to the extent that the Court will not decide in favor of Defendant on an element essential to proving the affirmative defense of official immunity, the Court will not dismiss Plaintiff's defamation claim on this ground.

26

Accordingly, Defendant's Motion to Dismiss the defamation claim is DENIED.

## II.    Claims Against the City of Harlingen

The City of Harlingen ("City") asks the Court to dismiss Plaintiff's § 1983 claims against it. (Doc. No. 33 at 1). The City characterizes these claims as (1) First Amendment speech retaliation and (2) denial of equal protection under the Fourteenth Amendment for alleged retaliation. (*Id.*). We address each in turn.

### A.    *First Amendment Retaliation*

Plaintiff alleges that "Defendants' actions caused the Plaintiff to be deprived of rights, privileges and immunities guaranteed by the Constitution of the United States, specifically the 1st and 14th Amendments of the United States Constitution, in that Defendants' actions violate her First Amendment right to free speech and her 14th Amendment right to equal protection." (Doc. No. 31 at 9).

Municipal liability under § 1983 requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The unconstitutional conduct "must be directly attributable to the municipality through some sort of official action or imprimatur." (*Id.*).

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The party must (1) suffer an adverse employment action; (2) show that the speech in question was on a matter of public concern; (3) show that her interest in commenting on matters of public concern outweighs the public employer's interest in efficiency;

and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001).

Thus, to survive a motion to dismiss her § 1983 retaliation claim against the City, Plaintiff must allege facts which, if true, establish that (1) a municipal policymaker (2) promulgated an official policy or had actual or constructive knowledge of a custom among its employees (3) that was a moving force in the deprivation of Plaintiff's First Amendment rights, i.e., was retaliatory in the sense that Plaintiff (i) suffered an adverse employment action (ii) that was motivated by speech on a matter of public concern and (iii) that Plaintiff's interest in commenting on these matters outweighed the City's interest in efficiency.

Plaintiff's Complaint does not specify which of Vela's actions violated her First Amendment rights, so the Court must attempt to construe these from her recitation of facts.  To the extent that Plaintiff's First Amendment claim alleges retaliation against her for her exercise of protected speech, we look to specific instances of Plaintiff's engagement in protected speech and to the retaliatory acts allegedly taken by the City in response.  Plaintiff alleges three acts involving speech prior to filing her formal sexual harassment complaint: (1) sometime before 2002, Plaintiff told Sgt. Guajardo about the ride along incident with Vela; (2) in 2004, Plaintiff discussed with Vela reassignments to other positions; and (3) in 2005, Plaintiff told Sgt. Manthey about the ride-along incident with Vela.

Regarding any alleged retaliation stemming from the conversations with Vela, the Court applies the same analysis to Plaintiff's claim against the City as it did to Plaintiff's claim against Defendant Vela. *See supra* at 10–11.  Specifically, Plaintiff does not allege that she said

anything in her conversations with Vela that could plausibly motivate adverse employment action, as required by the fourth element.

Regarding the conversations with Guajardo and Manthey, Plaintiff must show that knowledge of the contents of these conversations motivated any adverse employment decision made against her. The denial of Plaintiff's first four requests for assignments occurred before the conversation with Manthey. Since we disregard the conversations with Vela as relevant speech acts, that leaves the conversation with Guajardo as the only possibly motivating factor behind the denial of these assignments. Plaintiff, however, never alleges that the decisionmaker for these assignments–whether the relevant "policymaker," i.e., the Chief of Police, see *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), or a subordinate official executing a custom of retaliation of which the policymaker had actual or constructive knowledge–knew anything about the contents of the Plaintiff's conversation with Guajardo. If the decisionmaker for these assignments had no knowledge of this conversation, Plaintiff's speech cannot possibly have motivated denial of the assignments.[10]  *See Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) ("It is axiomatic that a party cannot be 'substantially motivated' by a circumstance of which the party is unaware.").

---

[10]Plaintiff seems to contend that by alleging a custom of retaliation within the police department, Plaintiff is relieved of the need to allege that the person or persons committing the alleged retaliation had knowledge of the protected speech. (*See* Doc. No. 18 at 4–6). To the extent that this is Plaintiff's contention, it is mistaken. Even if there is in fact a custom of retaliation at the Harlingen Police department, such a custom is irrelevant to Plaintiff's claim if the person (or persons) denying her the assignments was ignorant of her protected speech. Municipal liability on a § 1983 claim does allow for mere "constructive knowledge" by the policymaker of a custom of unconstitutional conduct among subordinates. Nonetheless, a plaintiff still needs to properly allege the elements of the specific unconstitutional conduct in question. When that alleged conduct is First Amendment retaliation, then the plaintiff must allege that the protected speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001). Since Plaintiff does not allege that the decisionmaker knew of Plaintiff's conversation with Guajardo, Plaintiff has not alleged that the contents of the conversation motivated any adverse employment action.

The same logic applies to Plaintiff's request for the communications manager position, the denial of which took place after the conversation with Manthey. Plaintiff never alleges that the relevant decisionmaker, whether a "policymaker" or a subordinate, knew of this conversation, or any other protected speech by Plaintiff, including her complaint against Vela for sexual harassment. Thus, Plaintiff has not alleged that her protected speech motivated the denial of this position.

The remaining allegedly retaliatory conduct that followed Plaintiff's filing of a complaint against Vela fails to constitute "adverse employment action." For the reasons discussed above, the Court finds that Vela's complaint accusing Plaintiff of making false charges is not an "adverse employment action" for the purposes of a retaliation claim. *See supra* at 11–13. The remaining conduct includes conducting a "sham" investigation into her complaint, transferring Plaintiff to positions within Vela's chain of command, shunning, assignment of desk duty, reassignment to an "old worn out unit," negative evaluations, unknown subjects keying her personal vehicle, changes in the incident reports she submitted, false allegations of official misconduct, and allowing her confidential complaint to be disseminated to other police officers within the department.

Plaintiff cites no authority suggesting that an improper investigation of a sexual harassment claim constitutes an "adverse employment action." Indeed, "legal authority does not support the view that a plaintiff/employee could successfully claim retaliation simply because she was unhappy with the results of her employer's efforts to prevent and correct harassing behavior." *Lamb v. City of West University Place*, 172 F. Supp.2d 827, 837 (S.D. Tex. 2000).

The remaining conduct, while certainly regrettable and disturbing if true, nonetheless fails to meet the exacting standard for "adverse employment action." *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). Even if Plaintiff means to suggest that these actions, taken together, constitute a "campaign of harassment" amounting to a "constructive adverse employment action," as allowed for by *Colson v. Grohman*, 174 F.3d 498, 514 (5th Cir. 1999), Plaintiff's allegations do not meet *Colson*'s high standard for a constructive adverse employment action. *See Breaux*, 205 F.3d at 160–61 ("Since Breaux and Ambroglio still have their jobs with the Department and have neither been demoted nor transferred to less desirable positions, they have failed to show that the Defendants' actions amounted to a constructive or actual adverse employment action.").

For these reasons, Plaintiff has failed to state a claim against the City of Harlingen for First Amendment retaliation under § 1983, and the City's Motion to Dismiss this claim is accordingly GRANTED.

B      *Fourteenth Amendment Retaliation*

Finally, the City states that Plaintiff "appears to allege that the retaliation claims violated Fourteenth Amendment Equal Protection" and asks the Court to dismiss this claim on the grounds that a "claim that an official took action in retaliation for making a complaint of sexual harassment is not an Equal Protection claim." (Doc. No. 33 at 7) (citing *Ratliff v. Dekalb County*, 62 F.3d 338, 340–41 (11th Cir. 1995); *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996); *Sharp v. City of Houston*, 960 F. Supp. 1164, 1177 (S.D. Tex. 1997).

To the extent that Plaintiff brings a retaliation claim under the Fourteenth Amendment, the Court GRANTS the City's Motion to Dismiss this claim. However, to the extent that

31

Plaintiff brings an *equal protection* claim under the Fourteenth Amendment, which claim the City does not discuss, the Court reserves judgment.

Accordingly,  the Court hereby **DENIES** Defendant Vela's Motion to Dismiss Plaintiff's Title VII claim to the extent that Plaintiff names Vela in his official capacity (Doc. Nos. 11, 32); **GRANTS** Vela's Motion to Dismiss Plaintiff's § 1983 First Amendment retaliation claim (Doc. Nos. 11, 32); **DENIES** Vela's Motion to Dismiss Plaintiff's  § 1983  Fourteenth Amendment equal protection claim (Doc. Nos. 11, 32); and **DENIES** Vela's Motion to Dismiss Plaintiff's defamation claim (Doc. Nos. 11, 32).  The Court further **GRANTS** Defendant City of Harlingen's Motion to Dismiss Plaintiff's First Amendment retaliation claim (Doc. Nos. 12, 33); and to the extent that Plaintiff has so pleaded, **GRANTS** the City's Motion to Dismiss Plaintiff's Fourteenth Amendment retaliation claim (Doc. Nos. 12, 33).  Finally, to the extent that it is still a live motion, the Court **DENIES** Defendant Vela's Motion to Stay Discovery (Doc. No. 20).

Signed this 20th day of January, 2009.

Andrew S. Hanen

United States District Judge

32